**Opinion filed June 6, 2013**



In The

# Eleventh Court of Appeals

————

## No. 11-12-00063-CR

————

## FELIX RAY OLIVAS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court
Ector County, Texas
Trial Court Cause No. C-37,785**

### M E M O R A N D U M   O P I N I O N

The jury convicted Felix Ray Olivas of the offense of aggravated robbery and assessed his punishment at confinement for fifteen years and a fine of $811. The trial court sentenced him accordingly. We affirm.

On the date of the offense, Dr. Jorge D. Blanco drove away from his office in his convertible Lexus. Although the top was down on his vehicle, the windows were raised. As he drove, Dr. Blanco was on his phone talking to another doctor and was attempting to get the other doctor to join his practice in Odessa.

Dr. Blanco felt as though the phone call was distracting, and he turned into an Albertsons parking lot. Once in the parking lot, Dr. Blanco parked and continued his telephone conversation. He had been parked for a few seconds when someone drove up and parked within six yards of him. He noticed that the front-seat passenger reached out the window toward the back passenger side door and opened it. A man got out of the back passenger seat and came toward him with what looked like a gun. Dr. Blanco put his car in reverse so that he could get away, but the man ran at him and Dr. Blanco stopped. The man leaned against the window and door with his left hand and reached over the window with his right hand and pointed the gun at Dr. Blanco's head. He told Dr. Blanco to give him all that he had. Dr. Blanco gave him his wallet, along with its contents of credit cards, the "usual" IDs, and about $811 in cash.

Dr. Blanco did not get a good look at the man who robbed him. He did note that he was an 18- to 25-year-old, 5' 2" to 5' 5" Hispanic with cut off hair and a scar or marking on his chin. There were several reasons that Dr. Blanco did not get a good look at the man: the gun was about two inches away from Dr. Blanco's head and he was hoping that, if he did not look at the man, the man would not shoot him; Dr. Blanco kept looking down; Dr. Blanco had removed his glasses to make it easier to talk on the phone; and Dr. Blanco was afraid of dying—"I just could imagine my brain being splattered." Dr. Blanco felt threatened and thought, "if he shot, I was going to die."

When the ordeal was over, Dr. Blanco called 9-1-1. Corporal John Sikes with the Odessa Police Department responded. When he arrived at the Albertsons parking lot, he met with Dr. Blanco. Dr. Blanco was obviously nervous, but he told Corporal Sikes what had happened. He described the man who robbed him in much the same way that he described him in court. However, Dr. Blanco was not

2

able to identify Olivas from a photo lineup, and neither could he identify him in court as the one who robbed him.

Dr. Blanco described the suspect's vehicle as square, old, dark in color, and bearing New Mexico license plates. When Corporal Sikes retraced the route Dr. Blanco had taken from his office to the Albertsons parking lot, he saw a green Toyota Camry parked in the driveway of a house near Dr. Blanco's office. The green Camry had a boxy rear end and New Mexico license plates. The house was also close to Albertsons.

After Corporal Sikes saw the vehicle, he answered another call, but he saw the Camry again later and conducted a traffic stop. Olivas was not in the car. Corporal Sikes checked the back doors of the vehicle, and neither of them could be opened from the inside. Meanwhile, another officer radioed that he was in foot pursuit of a person later determined to be Olivas; he was caught and arrested. During trial, Corporal Sikes identified Olivas as the person to whom he spoke the night of the arrest. When shown a photograph of Olivas during the trial, Corporal Sikes told the jury that the photograph of Olivas matched the description of the person Dr. Blanco described to him immediately after the robbery.

Anita Todd was an officer with the Crime Scene Unit of the Odessa Police Department. She was dispatched to process the crime scene. Dr. Blanco had his Lexus cleaned, washed, and waxed either the day before the crime or the day before that. Officer Todd took latent finger and palm prints from the driver's side door and window of Dr. Blanco's Lexus. She testified about the procedures for taking and comparing fingerprints. She was able to identify Olivas as the one who left the prints that she found on the Lexus. She also testified that the one who left the prints on the Lexus was the same person as the defendant in the courtroom. She testified that "[i]t's 100 percent his print."

3

In his sole issue, Olivas argues that the evidence was insufficient to support his conviction. His claim is that "there is no proof that he was the assailant."

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); and *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The record in this case shows that Olivas's fingerprints were found on Dr. Blanco's Lexus in the spot where Dr. Blanco said that the assailant placed his left hand. The vehicle had recently been detailed. Officer Todd, the fingerprint expert, testified that she was 100% certain that the prints belonged to Olivas. Corporal Sikes testified that the photograph of Olivas matched the description of the robber that Dr. Blanco had given him immediately after the robbery. He also testified that Olivas was the one who was arrested following a foot pursuit the day of the robbery.

Furthermore, "the fingerprints of an accused, which *necessarily must have been made at the time of the burglary*, are sufficient to sustain a burglary conviction without further evidence of identification." *Phelps v. State*, 594 S.W.2d 434, 435 (Tex. Crim. App. 1980) (quoting *Dues v. State*, 456 S.W.2d 116, 117 (Tex. Crim. App. 1970)). The evidence here is that Dr. Blanco's Lexus was detailed either one or two days before the robbery and that there is no indication that Olivas had access to it at a time other than at the time of the robbery. The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of

4

the weight to be given to their testimony. *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011 pet. ref'd).

In accordance with the standard previously set forth, we have examined all the evidence in the light most favorable to the verdict, and we determine that, based on that evidence and the reasonable inferences from it, a rational trier of fact could have found the essential elements of the offense in this case beyond a reasonable doubt. Olivas's sole issue on appeal is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


June 6, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

5